UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.W.,<br><br>               Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br><br>               Defendant. | Case No. 21-cv-08390-SVK<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 16, 17 |

Plaintiff appeals from the final decision of the Defendant Commissioner of Social Security, which denied his application for disability insurance benefits. The Parties have consented to the jurisdiction of a magistrate judge. Dkt. 8, 9. For the reasons discussed below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for summary judgment (Dkt. 16) and **DENIES** the Commissioner's cross-motion for summary judgment (Dkt. 17).

**I.      BACKGROUND**

On or about August 26, 2019, Plaintiff filed an application for Title II disability insurance benefits. *See* Dkt. 13 (Administrative Record ("AR")) at 258-264. On May 19, 2021, an Administrative Law Judge ("ALJ") denied Plaintiff's claim. AR 12-32 (the "ALJ Decision"). The ALJ concluded that Plaintiff has the following severe impairments: degenerative disc disease, obesity, chronic obstructive pulmonary disease, and sleep apnea. AR 18. The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with certain limitations. AR 19. The ALJ determined that with this RFC, Plaintiff could not return to his past relevant work as an "administrative clerk" but is capable of performing his past relevant work as a "registration clerk." AR 25. Accordingly, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, from June 1, 2019 (the alleged onset date) through the date of the ALJ decision. AR 25. Following the Appeals Council's denial of Plaintiff's request to

review the ALJ Decision (AR 1-6), Plaintiff timely appealed the ALJ Decision to this Court. Dkt. 1 (Complaint).

In accordance with Civil Local Rule 16-5, the parties filed cross-motions for summary judgment. Dkt. 16 (Plaintiff's motion for summary judgment); Dkt. 17 (Commissioner's cross-motion for summary judgment). The cross-motions for summary judgment are now ready for decision without oral argument.

## II.   ISSUES FOR REVIEW

    1.    Did the ALJ properly evaluate Plaintiff's past relevant work?

    2.    Did the ALJ properly evaluate Plaintiff's residual functional capacity?

    3.    Did the ALJ properly evaluate Plaintiff's credibility?

## III.   STANDARD OF REVIEW

This Court is authorized to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted).

The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id*. at 492. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks, citation, and alteration omitted); *see also Rounds v. Comm'r of Soc. Sec. Admin*., 807 F.3d 996, 1002 (9th Cir. 2015) ("Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citations omitted). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds*, 807 F.3d at 1002 (internal quotation marks and citation omitted). Where the evidence is susceptible to more than one rational interpretation, the

2

1  Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the
2  record. *Id.*

3  Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is
4  harmless. *Brown-Hunter*, 806 F.3d at 492. But "[a] reviewing court may not make independent
5  findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and
6  is instead "constrained to review the reasons the ALJ asserts." *Id.* (internal quotation marks and
7  citation omitted).

## IV. DISCUSSION

### A. Issue One: Evaluation of Past Relevant Work

#### 1. Legal standard for evaluating past relevant work

Plaintiff argues that the ALJ's finding that he could perform his past relevant work as a "registration clerk" is not supported by substantial evidence. Dkt. 16 at 9-11. At step 4, claimants have the burden of showing that they do not have the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 404.1520(e), (f); *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). Not all prior employment qualifies as "past relevant work" for purposes of step 4. "Past relevant work" means jobs performed within a 15-year period before the claimant's disability. Soc. Sec. Ruling ("SSR") 82-62; *see also* 20 C.F.R. § 404.1565. The work must have "lasted long enough for [the claimant] to learn to do it," and it also must have been "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 404.1560(b)(1), 404.1565. SGA is work done for pay or profit that involves significant mental or physical activities. 20 C.F.R. § 404.1572.

"Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto*, 249 F.3d at 844. "This is done by looking at the 'residual functional capacity and the physical and mental demands' of claimant's past relevant work." *Id.* at 844-845 (quoting 20 C.F.R. §§ 404.1520(e) and 416.920(e))." The claimant must be able to perform the functional demands and job duties of the job, either as actually or generally required. *Pinto*, 249 F.3d at 845 (citing SSR 82-61). "This requires specific findings as to the claimant's residual functional capacity, the physical and mental

3

1  demands of the past relevant work, and the relation of the residual functional capacity to the past
2  work." *Pinto*, 249 F.3d at 845 (citing SSR 82-62).
3       The ALJ found that Plaintiff had the following past relevant work, for which the ALJ did
4  not identify the employer:

- "Heavy truck driver, 905.63-014 … "; and
- "Admitting registration clerk, 205.362-018 …".

The ALJ also stated that "[t]he vocational expert also testified that the claimant's past work at Injury Control Systems was a composite job composed of:

- "Administrative clerk, 219.362-10 …"; and
- "Van driver, 913.663-010 …. ."

AR 25.

The ALJ discussed Plaintiff's work at Injury Control Systems in some detail and concluded that it was not a composite job. *Id.* The ALJ went on to state that "[d]espite the finding that this was not a composite job, I do not find that the claimant is able to return to his past relevant work as an administrative clerk, as the residual functional capacity above is more restrictive than allowed for in this position." *Id.* The ALJ then stated as follows:

> I find that the claimant is able to perform his past work as a registration clerk. As required by SSR 82-62, this work is considered past relevant work as it was performed within the past 15 years, was performed at substantial gainful activity, and was performed long enough for the claimant to achieve average performance (Hearing, Exhibit 3D, Exhibit 3E). The vocational expert testified that, based on the residual functional capacity above, the claimant could perform his past relevant work as a registration clerk as generally performed. Accordingly, I find that the claimant is able to perform his past relevant work as a registration clerk as generally performed.

Exhibits 3D and 3E cited by the ALJ in this portion of the decision are a work history report submitted by Plaintiff (AR 289-304) and an earnings history report that shows Plaintiff's yearly earnings from 2004 to 2020 (AR 268-271). Although the ALJ did not cite a specific portion of the hearing transcript, both Plaintiff and a vocational expert ("VE") testified concerning

4

Plaintiff's past relevant work. AR 41-45 (Plaintiff's testimony); AR 46-47 (VE's testimony). Most of this testimony concerned Plaintiff's past work at Injury Control Systems, but as noted above the ALJ found that Plaintiff could not return to his past work there. AR 25. As for other past work, Plaintiff testified that he had worked at Health Diagnostic Systems for six to eight months in 2016. AR 41. Plaintiff described this job as follows:

> I did desk clerk. I received patients, checked them in, setup their -- it was an MRI scanning place. So, I would setup their appointments and put them in a room for them to change. There were a little bit of authorizations to do, stuff like that.

*Id.* (sic). Plaintiff also testified that he had worked as a driver for Date Gourmet and at a desk job for Health Practice Management "doing authorizations." AR 44-45.

As with Plaintiff's hearing testimony, most of the VE's testimony focused on Plaintiff's past work at Injury Control Systems, which the VE testified as "administrative clerk, 219.362-010" and "van driver … 913.663-10. AR 46. In addition, the VE testified that "you have the registration clerk for a couple different thing [sic] and that would be known as an admitting or registration clerk, DOT 205.362-108." *Id.* According to the VE, "that's semi-skilled with a 4, it's sedentary per the DOT" and "[h]e did it at a couple different places and basically at one he did it light to medium and one at sedentary." *Id.* In response to the ALJ's hypothetical, the VE testified that a person able to perform work at a sedentary level with the restrictions ultimately incorporated into the ALJ's RFC finding "would be able to do the job as the registration clerk." AR 67-68.

The ALJ fails to provide the "specific findings" required at step 4 to support his conclusion that "claimant is able to perform his past work as a registration clerk" (AR 25), for several reasons. A fundamental problem with the past relevant work analysis is that the ALJ does not identify which of Plaintiff's jobs he considers the "registration clerk" position that he believes Plaintiff can still perform. The Commissioner attempts to supply the information missing from the ALJ's analysis by summarizing evidence from which one could conclude that the ALJ was referring to Plaintiff's past position with Health Diagnostic of California. Dkt. 17 at 4-6. However, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc*

5

rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Commissioner of Social Security,* 665 F.3d 1219, 1225 (9th Cir. 2009).  The Commissioner cites cases for the proposition that the Court can draw the necessary inferences even if an ALJ's decision is articulated with "less than ideal clarity." Dkt. 17 at 6 *and cases cited therein*.  Here, however, the ALJ decision did not even mention that Plaintiff worked at Health Diagnostic of California, and the VE testified that Plaintiff performed the registration clerk job "at a couple different places." AR 46.  The ALJ refers to the relevant position variously as "admitting registration clerk" and "registration clerk" (AR 25), and the Commissioner notes in the cross-motion for summary judgment that "[t]he DOT actually labels this occupation as a 'hospital-admitting clerk.'" Dkt. 17 at 2 n.1 (citing DOT 205.372-018).  These ambiguities undermine the Court's ability to review the ALJ's conclusions on the past relevant work issue.

In addition, the ALJ did not provide the necessary "specific findings" regarding the physical and mental demands of the "admitting registration clerk"/"registration clerk" position or the relation of Plaintiff's RFC to that position.  By contrast to the ALJ's discussion of Plaintiff's work at Injury Control Systems and the reasons why the ALJ concluded that he was "not able to return to his past relevant work [there] as an administrative clerk" (AR 25), for the "admitting registration clerk" position the ALJ provides only the DOT code ("205.362-018, sedentary, also performed as light and medium, SVP 4/semi-skilled" (AR 25)) and states, without a cite to the hearing record, that "[t]he vocational expert testified that, based on the residual functional capacity above, the claimant could perform his past relevant work was a registration clerk as generally performed." AR 25.  The Ninth Circuit has noted that it is difficult for a court to review an ALJ's decision where "the ALJ made very few findings and relied largely on the conclusions of the vocational expert." *Pinto*, 249 F.3d at 847.  This difficulty is compounded by the ambiguities regarding which position the ALJ is referring to, as discussed above, as well as the ALJ's apparent, but unexplained, distinction between the job demands of Plaintiff's past relevant work as an "admitting registration clerk"/"registration clerk" and as an "administrative clerk." AR 25.

Here, the ALJ erred by failing to adequately identify the past relevant work she concluded Plaintiff could perform and failing to make the necessary findings to support that conclusion.

Accordingly, the ALJ's finding at step 4 that Plaintiff could perform his past relevant work as an "admitting registration clerk"/"registration clerk" was not supported by substantial evidence. This error was not harmless because the ALJ concluded her disability analysis with a determination that Plaintiff could perform past relevant work did not proceed to a step 5 determination of whether Plaintiff could do other jobs. The Court therefore remands the ALJ to evaluate Plaintiff's past relevant work.

### B.   Issue Two: Evaluation of Residual Functional Capacity

"At steps four and five, the ALJ determines a claimant's residual functional capacity," which is "what one can still do despite one's limitations." *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014); 20 C.F.R. § 404.1520(e). The ALJ determines RFC "based on all the relevant medical and other evidence" in the record and "must consider a claimant's physical and mental abilities" and "the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain." *Garrison*, 759 F.3d at 1011. "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *see also Perez v. Astrue*, 831 F. Supp. 2d 1168, 1176 (C.D. Cal. 2011) ("An RFC is not a medical determination but an administrative finding or legal decision reserved to the Commissioner based on consideration of all the relevant evidence, including medical evidence, lay witnesses and subjective symptoms.").

#### 1.   Obesity

Plaintiff argues that the ALJ erred in not properly considering the effects of obesity on his RFC. Dkt. 16 at 12-13. Obesity may factor into the disability analysis in several ways. First, Social Security Rules provide that obesity, like other medical impairments, can be a "severe" impairment "when alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *Burch v. Burnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (quoting SSR 02-01p (2002)); *see also* SSR 19-2p. In determining whether a claimant's obesity is a severe impairment at step two of the disability analysis, the ALJ must "do an individualized assessment of the impact of obesity on an individual's functioning." *Burch*, 400 F.3d at 682. Second, although there is no

7

listing for obesity, obesity may factor into whether an individual's impairment meets or equals the requirements of a listed impairment at step three. *See* SSR 19-2p. Third, in evaluating obesity to determine a claimant's RFC at step four, the ALJ "must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis" and, as with other impairments, "the ALJ should explain how he determined whether obesity caused any physical or mental impairments." *Burch*, 400 F.3d at 683 (quoting SSR 02-01p (2002)); *see also* SSR 19-2p ("As with any other impairment, we will explain how we reached our conclusion on whether obesity causes any limitations").

The Court concludes that the ALJ did not err in considering the effects of Plaintiff's obesity. First, any error by the ALJ in the step two assessment of the impact of Plaintiff's obesity on her functioning for the purpose of determining whether her obesity is a severe impairment was harmless because the ALJ found that Plaintiff's obesity was a severe impairment. AR 18.

Second, in determining whether Plaintiff's impairments met or equaled a listing, the ALJ concluded that "the evidence does not support a finding that the claimant's weight compounded their other physical impairments such that they would medically equal a listing." AR 19. The Court notes that Plaintiff does not argue that he should have been found at step three to meet or equal a listing due to her obesity. *See* Dkt. 16 at 12-13. Therefore, Plaintiff has not shown an error in how the ALJ evaluated obesity in this regard.

Third, and finally, Plaintiff is incorrect when he argues that "the ALJ addresses obesity limited to whether it meets a listing in combination with other physical impairments" whereas "[t]he Commissioner's regulations require the ALJ to address whether morbid obesity is functionally limiting." *Id.* at 13. In evaluating Plaintiff's RFC, the ALJ stated that "the claimant's condition is compounded by his obesity" and that she had "considered the impact of the claimant's obesity in exacerbating the problems and functional limitations caused by his other impairments in accordance with SSR 19-2p." AR 22-23 (citing medical record evidence). This statement, although conclusory, is reinforced by the fact that the ALJ discusses Plaintiff's "elevated body mass index" throughout the discussion of how the ALJ arrived at a conclusion regarding Plaintiff's RFC. AR 22-24. Plaintiff contends that "[t]he record references the effect obesity has

8

on [Plaintiff's] diabetes, knees, legs and asthma." Dkt. 16 at 13. According to Plaintiff:

> Matthew Suehiro states that Wilson's impairments are "probably due to COPD, morbid obesity and physical deconditioning" (AR 3103). Wilson was unable to go through testing because of his obesity. As such, there is evidence in the record Wilson's BMI of over 50 is limiting.

*Id.* In addition, Plaintiff testified at the hearing that his morbid obesity affected his ability to twist left to right and that he "think[s] the obesity is really pulling on a lot of my -- putting a lot of pressure on my injuries. I think it's not helping one bit. It's probably one of the biggest factors going against me right now." AR 52-53, AR 61-62. However, the ALJ explained that the RFC took into account Plaintiff's elevated body mass index and other abnormal findings "by limiting the claimant to work at the sedentary exertional level with additional postural limitations." AR 23; *see also* AR 24 ("elevated body mass index" and other conditions "are also consistent with a limitation to word at the sedentary exertional level with postural limitations"); AR 23 (stating that RFC accommodates Plaintiff's "elevated body mass" and other limitations). Although the ALJ does not specifically address a note in the medical record by Dr. Suehio stating "[p]robably due to COPD, morbid obesity and physical deconditioning," Plaintiff has not demonstrated that this information would support any greater or different restrictions than those already incorporated in the RFC.

Plaintiff has not identified, and there is no evidence in the record of, "any functional limitations as a result of [his] obesity that the ALJ failed to consider." *Burch*, 400 F.3d at 684. Based on this record, the ALJ adequately considered Plaintiff's obesity in determining Plaintiff's RFC. Accordingly, although the Court remands on other issues, the Court finds no error with respect to the ALJ's evaluation of Plaintiff's obesity.

### 2. Mental Limitations

The Social Security Administration has supplemented the five-step sequential disability evaluation process with special regulations governing the evaluation of mental impairments at steps two and three of the five-step process. *See generally* 20 C.F.R. § 404.1520a. At step two of the sequential analysis, in which the ALJ considers whether a claimant suffers from a "severe" impairment, or combination of impairments (*see* 20 C.F.R. § 404.1520), an ALJ must document

9

application of a special psychiatric review technique ("PRT") in his or her decision. *Keyser v. Comm'r*, 648 F.3d 721, 725 (9th Cir. 2011). "Specifically, the reviewer must determine whether an applicant has a medically determinable mental impairment [], rate the degree of functional limitation for four functional areas [], determine the severity of the mental impairment (in part based on the degree of functional limitation) [], and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder []." *Id.* (citing 20 C.F.R. § 404.1520a). The ALJ's decision "must incorporate the pertinent findings and conclusions based on the technique" and "must include a specific finding as to the degree of limitation in each of the functional areas." *Id.* (citation omitted). "Where there is a 'colorable claim of mental impairment,' the ALJ's failure to follow the section 1520a 'special technique' requires reversal." *Smith v. Astrue*, No. C 09-0377 MHP, 2010 WL 5776060, at *7 (N.D. Cal. Sep. 16, 2010) (quoting *Selassie v. Barnkart*, 203 Fed. Appx. 174, 176 (9th Cir. 2006)); *see also Keyser,* 648 F.3d at 726; *Hayes v. Berryhill*, 721 Fed. Appx. 648, 651 (9th Cir. 2018) ("The ALJ was not required to complete a psychiatric review technique form to determine the severity of any mental impairment because [claimant] did not present a 'colorable claim of mental impairment'") (citing *Keyser*); *Alekseyevets v. Colvin*, 524 Fed. Appx. 341, 343 (9th Cir. 2013) ("The ALJ's determination that [claimant] failed to present a colorable claim of mental impairment was supported by substantial evidence in the record, and thus utilization of the PRT was not required.").

Plaintiff is correct that the ALJ in this case did not discuss or apply the special PRT in her decision. *See* Dkt. 16 at 14. As discussed above, whether this omission requires reversal depends on whether Plaintiff made a "colorable claim" of mental impairment. "A colorable claim is one which is not 'wholly insubstantial, immaterial, or frivolous.'" *Smith*, 2010 WL 5776060, at *8 (citations omitted).

Plaintiff does not identify any actual diagnosis of mental impairment in the medical record. However, Plaintiff notes several references to depression and anxiety disorders in the medical

record. Dkt. 16 at 14 (citing AR 2488, [1] AR 2494, AR 3152); *see also* AR 1161. Plaintiff also testified at the hearing that "I'm getting depressed and sad." AR 49. In addition, a disability report completed on Plaintiff's behalf in March 2020 stated that he was undergoing or contemplating medical treatment for "Physical and Mental (including emotional or learning problems)" conditions. AR 323. A state agency psychological consultant, Dr. Lucila, reviewed Plaintiff's medical records on April 29, 2020 and May 6, 2020, although she concluded that there was no medically determinable impairment in this area. AR 122-123.

The Commissioner cites evidence that might support a conclusion that the record evidence did not amount to a "colorable claim" of mental impairment. Dkt. 17 at 9-10. It is true that a finding of no medical impairment may be appropriate where "there was no diagnosis, no medical opinions, no mental status examination findings, and no RFC limitations for mental impairments assessed by any physician." *Navarro v. Berryhill*, No. CV 16-05645-JEM, 2018 WL 1155968, at *4 (C.D. Cal. Mar. 2, 2018). The Court expresses no opinion on whether such a conclusion might be correct in this case. The problem here is that despite the evidence discussed above, the ALJ did not even acknowledge Plaintiff's claim of a mental impairment or explain if or why the ALJ concluded that she did not need to apply the PRT. As such, the Court is unable to determine whether the ALJ's decision on this issue is supported by substantial evidence.

For the reasons discussed, the Court remands for the ALJ to consider the effect of Plaintiff's claimed mental impairments and, for the reasons discussed below, the impact of those impairments on the credibility of Plaintiff's testimony and the RFC at subsequent sequential steps, if necessary.

**C.    Issue Three: Plaintiff's Credibility**

"Where, as here, an ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing

---

[1] As the Commissioner notes (Dkt. 17 at 9 n.7), Plaintiff's citation to AR 2489 was likely a reference to AR 2488.

so.'" *Brown-Hunter*, 806 F.3d at 492-93 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citations omitted).

The ALJ found that "[a]fter careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 20. In reaching this conclusion, the ALJ acknowledged Plaintiff's statements that his back problems made it difficult for him to walk, stand, go up and down stairs, bend, or twist; that he can sit and stand for approximately 30 minutes, cannot lift more than 10 pounds, and uses a cane to ambulate; that he has weakness in his legs and cannot squat; and that he does not sleep well and has problems with his breathing. AR 20. The ALJ went on to discuss the medical record on these issues. AR 20-24. The ALJ ultimately decided to include certain postural, exertional, and exertional limitations in the RFC to account for problems substantiated by the medical record. *Id.*; *see also* AR 19 (finding Plaintiff had RFC to perform sedentary work except occasional climb ramps or stairs and never climb ladders, ropes, or scaffolds; occasional balance, stoop, crouch, kneel, and crawl; occasional exposure to extreme cold; and occasional exposure to irritants such as fumes, odors, dusts, and gases).

Plaintiff does not challenge this analysis except for arguing that the ALJ did not address his pain. Dkt. 16 at 15-16. According to Plaintiff:

> [Plaintiff's] primary issue is his inability to control his pain. He is unable to take opioids. The medical record reflects chronic pain. Dr. Kacy Church diagnoses his pain as "chronic pain "(AR 3103). Wilson has back, abdominal stomach, shoulder, and knee pain. His pain management team report that after his first back operation in 2006 he had less difficulty until 2014. His pain continued to increase until he

>had the second back fusions 2018. The surgery helped but his sense of weakness in his legs became worse and he pain returned (AR 3153).

AR 15.

Plaintiff has not shown error in this regard. The ALJ specifically acknowledged and discussed Plaintiff's claims of pain and leg weakness in terms of the medical record. *See* AR 20-24. The RFC as determined by the ALJ limited Plaintiff to sedentary work, involving little to no climbing, stooping, crouching, kneeling, and crawling. (AR 19).

However, the failure of the ALJ to properly evaluate Plaintiff's claimed mental impairments, as discussed above, may have impacted the ALJ's subsequent credibility determination—in particular, concerning the intensity, persistence, and/or limiting effects of Plaintiff's combined impairments. *See Dixon v. Saul*, 411 F. Supp. 3d 837, 855 (N.D. Cal. 2019) (holding that reevaluation of medical opinions supporting a mental impairment "could affect the ALJ's conclusions regarding Plaintiff's credibility"). Accordingly, on remand, the ALJ is also required to reconsider Plaintiff's credibility and, if necessary, the related RFC assessment.

Plaintiff argues that if the Court finds error in the ALJ's evaluation of Plaintiff's credibility, it should apply the "credit as true" doctrine and order an award of benefits rather than remanding for further findings on the issue. Dkt. 16 at 16. The Commissioner states that "[a]s a matter of record, the Commissioner disagrees with Circuit precedent establishing the 'credit as true' rule." Dkt. 17 at 13 n.10. The Court need not explore this disagreement further because as Plaintiff acknowledges, the "credit as true" rule applies only if "it is clear from the administrative record that the ALJ would be required to award benefits if the claimants … (symptom) testimony was credited." Dkt. 16 at 16 (sic); *see also McDade v. Berryhill,* No. 17-cv-00763-JCS, 2018 WL 4635646, at *22 (N.D. Cal. Sep. 27, 2018). Plaintiff has not identified any testimony that would require an award of benefits if credited and, in any event, subjective symptoms are, in and of themselves, insufficient to establish disability. 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability" and "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); *see also* 20 C.F.R. § 404.1529(a) (statements about pain or other symptoms "will not alone establish" disability).

## V. CONCLUSION AND DISPOSITION

The Social Security Act permits courts to affirm, modify, or reverse the Commissioner's decision "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g); *see also Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018) (citations omitted).

Because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. On remand, the ALJ must properly evaluate the issues discussed above based on applicable law and the guidance provided in this opinion. It is not the Court's intent to limit the scope of the remand.

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for summary judgment, **DENIES** the Commissioner's cross-motion for summary judgment, and **REMANDS** this case for further proceedings.

**SO ORDERED.**

Dated: December 21, 2022

SUSAN VAN KEULEN
United States Magistrate Judge